(C. D. 1635)

THE SINGER MANUFACTURING CO. v. UNITED STATES

United States Customs Court, Second Division

(Decided July 22, 1954)

*Winthrop, Stimson, Putnam & Roberts* (*Elliott E. Vose* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: So-called sewing-machine heads were classified by the collector of customs as parts of sewing machines, valued at over $10 each, which are enumerated in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (86 Treas. Dec. 121, T. D. 52739), and subjected to duty at the rate of 10 per centum ad valorem.

Plaintiff claims by its protest that the articles in question, which were imported without an electric motor or other driving mechanism, are, in fact, sewing machines, valued at not over $10 each, within the meaning of that term in said paragraph 372, as modified, *supra*, and dutiable accordingly at 7½ per centum ad valorem.

The statutory provisions with which we are here concerned read, so far as pertinent, as follows:

Paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*, supplemented by Presidential proclamation (86 Treas. Dec. 337, T. D. 52820):

Sewing machines, not specially provided for, valued not over $10 each_____ 7½% ad val.

*   *   *   *   *   *   *

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

Parts of sewing machines_____ 10% ad val.

*   *   *   *   *   *   *

The record discloses the following facts, which are not disputed:

At the trial, it was stipulated that the merchandise in controversy, represented by exhibit 1, is valued at less than $10. If, therefore, the so-called sewing-machine heads in issue are held to be, in fact, sewing machines, they are properly dutiable as such at 7½ per centum ad valorem, as claimed by plaintiff.

The merchandise consists of the conventional sewing-machine "heads," comprising a horizontal and a vertical arm, and the flat plate or "bed" to which the vertical arm is joined, together with the various parts, including a needle, which complete the mechanism. It is composed of cast iron and steel, painted and decorated. After importation, the articles are equipped with an electric motor, foot controller, a light, and a cabinet or stand, and in that condition are sold at retail to the public.

Exhibit 2 illustrates the electric motor, foot controller, and light, which constitute one assembly connected by an electric cord.

Illustrative exhibit 3 is the "spoke balance wheel" which may be substituted for the "disk balance wheel" on exhibit 1, when it is desired to power the machine by a handcrank rather than by an electric motor.

Exhibit 4 is a handcrank which together with a "spoke balance wheel" may be used to operate exhibit 1.

Exhibits 5 and 6 are pictures depicting some of the principal parts of the imported commodity.

Four witnesses, referred to below, were called on behalf of plaintiff, and their testimony stands unrebutted and uncontradicted—

Stuart E. King, for several years general traffic manager of the plaintiff company but who had been employed by it for 18 years. He identified exhibit 1 as representing the imported machine.

Edward W. Stewart, for 10 years field service supervisor for the Singer Sewing Machine Co., selling at retail sewing machines, parts, and appliances. He also had 10 years' previous experience with The Singer Manufacturing Co., assembling and repairing sewing machines.

Donald C. Tauchert, for 4 years last past assistant to the vice president in charge of production of The Singer Manufacturing Co., and for 3 years prior thereto assistant to the secretary of the Singer Sewing Machine Co., engaged in the distribution of sewing machines throughout the United States and Canada.

Edwin Lawrence Ching, sales manager of the industrial division of the Singer Sewing Machine Co., had 22 years' experience in the sale of industrial sewing machines in various branch offices in the United States.

In passing, it may be noted that when the court inquired as to the relationship between The Singer Manufacturing Co., and the Singer Sewing Machine Co., counsel for the plaintiff stated—"They are separate corporations, your Honor. The Singer Manufacturing Company, as the name suggests, engages in the manufacture of sewing machines and parts and associated implements. It markets or sells its products through a separate corporation called the Singer Sewing Machine Company. * * * They are separate companies. The stock of the Singer Sewing Machine Company is owned by the manufacturing company."

All of the witnesses were men of ability, intelligence, and experience, and well qualified to testify upon the particular subject matter, and, since their testimony is unchallenged and unrefuted, we deem it sufficient to merely summarize the salient facts necessary to a proper determination of the issue.

The merchandise represented by exhibit 1 is described on the invoice as "heads only for 99K13 machines" and is designed to do all types of home sewing, such as making wearing apparel, dresses, skirts, or infants' wear, things of that sort. It has all the parts which are needed to cause it to form a stitch, and there are no parts which might be added to improve its sewing function. If it were threaded, the machine in its imported condition would form a stitch, and the balance wheel is rotated by hand. As a matter of fact, even when an electric motor is attached to the machine, hand rotation of the balance wheel is used in sewing operations, such as starting and ending seams and turning stitches. In its condition as imported, the machine is designed to be driven by an electric motor, and it is sold in the United States at retail with a motor, a foot controller to start, stop, and regulate the motor, and an electric light to illuminate the sewing surface. Some form of stand, cabinet, or portable base and cover also accompanies the article when sold at retail. However, by simple readjustment, the machine may be driven by a handcrank, in which event the disk balance wheel is replaced by a spoke balance wheel and a handcrank is attached in place of the motor, it appearing that the machine will operate by a handcrank or by an electric motor.

The witness Stewart stated that in the manufacture and repair of sewing machines exhibit 1 would be commonly known as a sewing machine; that the term "parts of sewing machines" has reference to such components of exhibit 1 as the balance wheel or the bobbin winder but would not describe exhibit 1 itself; that the term sewing-machine "head" describes a machine either in the condition of exhibit 1 or with the motor assembly attached.

Tauchert testified that he placed the order for the machines in controversy and sold them to the Singer Sewing Machine Co. in the condition in which they were imported as sewing machines; that the majority of sales of this particular model in countries other than the United States are for handcrank operation. Based upon his experience in selling the machines at wholesale, Tauchert stated that he would consider exhibit 1 to be a "sewing machine" and that the term "parts of sewing machines" would not include exhibit 1.

The witness Ching sold sewing machines and allied equipment to the industrial trade for use in the "manufacture of various wearing apparel, tents, tarpaulins, shoes, and numerous other articles." He testified that the sewing machines which he sold were basically similar to exhibit 1, the difference being that the industrial machines were sturdier and intended for greater speed and production, and that many of the machines which he sells at retail are ordinarily sold without a motor and, in that condition, are regarded as sewing machines.

This is not a case of first impression. Plaintiff has invited our attention to a decision by this court, when known as the Board of General Appraisers, rendered more than 40 years ago, and it appears from the abstract report of the case (*Hirth-Krause Company* v. *United States*, 19 Treas. Dec. 641, Abstract 23473, decided June 8, 1910) that it related to sewing-machine heads which had been classified as manufactures of metal in paragraph 199 of the Tariff Act of 1909. In its opinion, the court said in part—

* * * We find from the testimony offered and the exhibits in the case that the articles are complete machines; that all of the working parts are practically in the "head," and that these, as imported, are affixed to a workbench or counter, belted to shafting, and used in that way by the shoe manufacturer. As a sewing machine for its purpose it is complete, and only requires to be connected with a motor or other power agent in use. We hold the articles to be practically complete sewing machines rather than parts of such machines.

It appears that, upon motion of the Government, a rehearing was granted in the *Hirth* case and further evidence was introduced. Upon resubmission, the case was again decided, and the following is quoted from the opinion rendered in the matter of *Hirth-Krause Co.* v. *United States*, 21 Treas. Dec. 231, Abstract 26613, decided September 16, 1911—

The record in these cases now before us for decision presents no new facts, and in determining the issue again presented we arrive at a conclusion no different

than that expressed in Abstract 23473 (T. D. 30691). We hold the so-called "sewing-machine heads" classifiable under paragraph 197, as claimed.

The machines are practically complete and require only to be connected with a motor or other power agent to be availed of. They are in our opinion "machines," and not parts of machines. They are used to fasten leather together and perform that work by a sewing arrangement using a thread. Within the meaning of the term "sewing machine" as laid down by the board in G. A. 7225 (T. D. 31623) these "sewing-machine heads" fall, and we sustain the claim in the protests that they are dutiable at 30 per cent ad valorem under paragraph 197. * * *

Defendant, in its brief, seeks to distinguish the *Hirth* case, stating in part that—

* * * There is no showing herein that the involved sewing machine heads are either identical or similar to the heads involved therein. The sewing machine heads involved in said cases were industrial sewing machine heads. The sewing machine heads involved herein are household sewing machine heads. * * *

While we do not have before us for ocular inspection a sample of the sewing-machine heads in the *Hirth* case, which, as above pointed out, was decided more than 40 years ago, nevertheless, the description of the merchandise in the *Hirth* case is an accurate word picture of the merchandise now before us, the only difference being that in the former case the sewing-machine heads were designed for use in the industrial field for sewing leather goods, while in the instant case the machines are designed principally for sewing fabrics. However, that is a distinction of little consequence in this controversy for reasons which follow.

Referred to in the second *Hirth* decision, *supra*, is the case of *Singer Manufacturing Co. et al.* v. *United States*, 20 Treas. Dec. 1055, T. D. 31623, decided May 26, 1911, wherein this court, then known as the Board of General Appraisers, had before it certain machines, of which some were identified as "46K 15," used in stitching leather gloves, and others as "No. 12 straw-sewing machines," used in sewing together straw braids.

In the course of its opinion, the board made the following significant observation, with emphasis added—

The uncontradicted evidence in these cases is that sewing machines as understood commonly and in trade embrace not only the machines constructed for family or domestic sewing purposes, but also such as are specially adapted to the requirements of various manufacturing purposes. The proof as offered establishes the fact that the term "sewing machines" *includes all varieties and styles of mechanism used to make a stitch which fastens together or unites any fabric or material by the use of thread applied by a needle having an eye.*

Further, the opinion recites—

* * * In the present instance the sewing machines in question unite two pieces of leather in the making of gloves, or braids in the making of hats. While as popularly understood a sewing machine is that familiar article of household

economy used for domestic sewing, *the truth is that sewing machines comprise many varieties of machines that accomplish the sewing of fabrics and other materials, and which are not used in the household.* These at times differ from the household sewing instrument only in slight detail. In some instances the running gear is made heavier, so as to strengthen the machine so that it may be operated by power, or to make it serviceable in sewing heavy materials, such as leather, paper, or sailcloth. As each of these machines sews with needle and thread, it is a sewing machine.

We are clearly of the opinion, for the reasons set forth in the authorities above quoted, that the subject machines are sewing machines within the intent, scope, and meaning of that term, as it appears in said paragraph 372.

Another important consideration which is applicable here resides in the fact that the term "sewing machines," as it appeared in paragraph 197 of the act of 1909 and which was interpreted in the *Hirth* and *Singer* cases, above quoted, was carried forward in paragraph 441 of the Tariff Act of 1913 and in paragraph 372 of the Tariff Acts of 1922 and 1930. Knowledge of the interpretation of the term "sewing machines" in the *Hirth* and *Singer* cases, *supra*, was imputed to the Congress when it reenacted the term without change in the Tariff Acts of 1913, 1922, and 1930. This would seem to be a clear instance of legislative approval of judicial interpretation.

We have examined and given consideration to other cases and points raised in the briefs of the parties but, in view of the conclusion we have reached, deem it unimportant to discuss them here.

Upon the facts of record and for the foregoing reasons, we find and hold the sewing-machine heads in controversy are properly dutiable at 7½ per centum ad valorem as sewing machines in paragraph 372 of the Tariff Act of 1930, as modified, *supra*, as claimed by plaintiff. That claim in the protest is sustained, and judgment will be entered directing reliquidation accordingly.