(C.D. 2563)

Acec Electric Corp. *v.* United States

139

United States Customs Court, Second Division

(Decided August 12, 1965)

Siegel, Mandell & Davidson (David Serko and Allan H. Kamnitz of counsel) for the plaintiff.

John W. Douglas, Assistant Attorney General (Richard J. Kaplan, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: This action is directed against the classification of certain clutch-brake electric motors, which were assessed with duty at the rate of 13¾ per centum ad valorem under the provision for "Articles having as an essential feature an electrical element or device, * * *" of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

Plaintiff claims said motors are designed for use with industrial sewing machines and, accordingly, are properly dutiable at the rate of 10 per centum ad valorem under the provision for "Parts of sewing machines," paragraph 372 of the Tariff Act of 1930, as modified by said Torquay Protocol to the General Agreement on Tariffs and Trade, supra. At the trial, plaintiff amended its protest to claim said merchandise to be properly dutiable at 11½ per centum ad valorem as machines, not specially provided for, under the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108. Plaintiff, in its brief, has indicated it does not desire to press this alternative claim. Accordingly, said claim is deemed abandoned.

The pertinent portions of the statutes involved herein provide as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, supra:

Articles having as an essential feature an electrical element or device, * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*      \*      \*      \*      \*      \*      \*

Other (* * *) _____ 13¾% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra:*

Parts, not specially provided for, wholly or in chief value of metal or porcelain of any article provided for in any item 372 in this Part:

    Parts of sewing machines_____ 10% ad val.

The record herein consists of two exhibits and the testimony of two witnesses called on behalf of plaintiff. Plaintiff's exhibit 1 is a sample of the involved motor, which it was agreed was to be withdrawn at the end of the proceedings, and exhibit 1–A, a pamphlet, depicting the imported merchandise, was received in its place. Plaintiff's illustrative exhibit 2, is part of a brochure, depicting the article manufactured by Consolidated Sewing Machine Corp., which purchased the involved electric motors. The portion circled represents the sewing machine of which the imported merchandise is claimed to be a part. The sewing-machine head was labeled "A."

The first witness called on behalf of plaintiff was Mr. Walter Foa, treasurer of the importing company, who testified that he was familiar with the imported merchandise and had sold it to the Consolidated Sewing Machine Corp.; that he had observed the use of said motor on the sewing machine; that he had never seen it used for any other purpose and knew of no other purpose for it; that the important features of the motor are the clutch, the wheel, and the brake, which permit the motor to continually run and stop and restart the operation of the sewing machine; that it is designed and dedicated for that use.

Mr. Werner W. Schwartz, chief engineer for Consolidated Sewing Machine Corp., testified that he possessed an engineering degree and that he was familiar with the merchandise at bar, which he described as the driving component of a complete sewing machine; that he has been familiar with exhibit 1 for about 10 years, but that merchandise similar to exhibit 1 has been used on sewing machines for about 50 years; that, in his 27 years' experience, he knows of no other use for the imported merchandise than as "parts of sewing machines"; that exhibit 1 is dedicated to be exclusively used for this purpose, because of the features it possesses; that some of the features include a mounting which is standard for a particular use; that the mounting has three bolt-holes, in two-directional spacing, and, in their relative position to the belt groove of a pulley, are identical to various products manufactured in the United States by two different manufacturers; that it has a quick belt release, indicated on exhibit 1–A as No. 2, performing a quick release of the driving belt which joins the driving motor and serves as a means of adjustment for stretch of the driving belt; that item 3 on exhibit 1–A is a necessary feature for industrial sewing machines, particularly since they have to be started quickly in order to obtain maximum sewing speed within

a reasonably short period of time, and also stopped quickly; that the clutch feature effectuates the rapid start; that No. 3 on exhibit 1–A has a dual function, i.e., a clutching function and a stopping function; that exhibit 1 has a flywheel, the mechanical function of which is to store energy and give off the energy when it is called for, and which serves the purpose of reducing the effect of inertia. The witness further testified that a sewing machine could not as a commercial proposition operate without an article such as exhibit 1; that, in addition to the features indicated, *supra*, the imported motor has a low voltage takeoff and a plug-in to enable the use of a light for the sewing machine; that industrial sewing machines usually utilize this low voltage.

On cross-examination, Mr. Schwartz testified that exhibit 1 could be utilized to operate any industrial sewing machine requiring a clutch-brake motor; that said motor is assembled at a predetermined space beneath the sewing-machine table, to the rear of its axis of symmetry, and is not placed within the sewing-machine head itself; that the sewing-machine head itself is placed on top of the table; that the power is transmitted by means of a pulley and belt; that, ordinarily, where a different machine is necessary, it may be easily slid out from the table proper and replaced by another sewing machine with the motor remaining intact; that, ordinarily, they would not change the motor, but merely remove the sewing-machine head.

Based upon the record as made herein, plaintiff contends that the imported motors, having been designed and dedicated for use with industrial sewing machines, are parts thereof, under the principle set forth in *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602.

Defendant, on the other hand, urges that the burden is upon the plaintiff not only to overcome the presumption of correctness attaching to the classification of the collector but that plaintiff must establish that the motors at bar are dedicated to use with sewing machines; that the motors at bar are essential to the operation of sewing machines; and that sewing-machine heads *per se* do not constitute complete sewing machines for tariff purposes.

The unrebutted evidence in this case establishes that the motors at bar are dedicated for use with industrial sewing machines, serve a useful function, and are necessary for the efficient operation of an industrial sewing machine. This disposes of the first two arguments of the defendant set forth, *supra*. The third argument, that the sewing-machine heads are complete sewing machines for tariff purposes, is supported by previous decisions. See *The Singer Manufacturing Co.* v. *United States*, 33 Cust. Ct. 60, C.D. 1635; *Hirth-Krause Company* v. *United States*, 19 Treas. Dec. 641, Abstract 23473; *Same* v. *Same*, 21 Treas. Dec. 231, Abstract 26613 (rehearing).

In the above-cited cases, importations of sewing-machine heads were held to be sewing machines. Since the sewing-machine head contains the essential parts necessary for the production of a stitch, it is, in that sense, a complete sewing machine. However, as pointed out, in the first *Hirth-Krause Company* case, *supra*, "* * * it is complete, and only requires to be connected with a motor or other power agent in use." It is obvious that some form of motive power is necessary for the operation of a sewing machine. The record herein establishes that such motive power for the industrial sewing machine is the type of clutch-brake motor involved herein.

The recent pronouncement of the U.S. Court of Customs and Patent Appeals in *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849, would appear to directly control the issue at bar. Also deemed controlling is the case of *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758.

In the *Gallagher & Ascher* case, *supra*, certain gasoline operated heaters designed and dedicated for use in the Volkswagen automobiles were held to be parts of automobiles, rather than articles having as an essential feature an electrical element or device under the provisions of paragraph 353 of the Tariff Act of 1930, as modified. In the *Trans Atlantic Company* case, *supra*, mounting brackets for door closers, which were used only for mounting a door closer on a door frame, were held to be parts of machines rather than under the provisions of paragraph 397 of the Tariff Act of 1930, as modified.

In the *Pompeo* case, *supra*, certain superchargers designed for and dedicated for use with Ford automobiles were held to be parts of automobiles rather than under the provisions of paragraph 372 of the Tariff Act of 1930, as modified.

In its decision in the *Gallagher & Ascher* case, *supra*, the appellate court, in arriving at its conclusion, made the following comment:

Here, as in *Pompeo*, the imported articles are dedicated to a sole specific use and "for no other use." Here, as in *Trans Atlantic Company*, the imported article serves a useful function. In *Trans Atlantic* the brackets mounted on the door frame were necessary to the efficient operation of the door closer. * * *

* * * When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified.

By the same token, with respect to the merchandise at bar, it is designed and dedicated to a sole specific use and for no other use, serves a useful function, and is necessary for the efficient operation of the sewing machine. We, therefore, find that the imported motors are parts of sewing machines within the purview of paragraph 372 of the Tariff Act of 1930, as modified, *supra*, as claimed herein.

Judgment will be entered accordingly.